(No. 51225.-

THE PEOPLE *ex rel.* LEONARD MOSLEY, Petitioner, v.
BERNARD CAREY, State's Attorney, Respondent.

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

James J. Doherty, Public Defender, of Chicago (John Thomas Moran, Assistant Public Defender, of counsel), for petitioner.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for respondent.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

We allowed the motion of relator, Leonard Mosley, for leave to file in this court an original *mandamus* action pursuant to our Rule 381 (58 Ill. 2d R. 381). Relator had been indicted for murder by a Cook County grand jury, and, after numerous continuances, the case was called for trial on June 5, 1978. Selection of the jury and administration of their oath was completed on June 6. Before any evidence was presented on June 7, however, a mistrial was declared, and the writ of *mandamus* is now sought to bar the State's Attorney of Cook County from reprosecuting relator. It is further urged that this court establish a mode of appeal which would permit an interlocutory review of a trial judge's order denying dismissal of an indictment on double jeopardy grounds.

A detailed description of the context in which the mistrial was declared is necessary to an understanding of the issues. Following arguments and rulings on motions on the morning of June 7 and prior to opening statements, an assistant State's Attorney brought to the attention of the judge the fact that an article concerning the trial had appeared in that morning's Chicago Tribune. The article appeared under a headline indicating substantial delay had occurred between indictment and trial, and its text included information that two elderly prosecution witnesses had died prior to trial and related facts which could have provided a motive for the alleged crime. The assistant prosecutor moved to "voir dire" the jury to determine if any of the jurors had read the article and, if so, whether they would be biased. The defense, while objecting to the prosecutor's motion as premature, charged that the prosecution was responsible for the appearance of the newspaper article, and that this constituted fundamental unfairness and a violation of due process. In support of this allegation, defense counsel sought a court order

compelling the appearance of the Tribune reporter who wrote the article. The following exchange then took place:

> "THE COURT: If you make a motion, perhaps I could address myself, but now you are on a fishing trip and I don't know what you are driving at.
>
> MR. MOORE [defense counsel]: Our motion is for a mistrial. Our motion is as to prosecutorial misconduct and fundamental unfairness."

After the court indicated a desire to examine the jury to determine if the jurors had read the article and, if so, whether it had influenced them, defense counsel responded:

> "Prior to that, we presently have a motion for a mistrial, your Honor, and ask that we present you with a written motion. I would, at this time, ask leave of court to file a motion to dismiss the indictment. ***"

The judge then called in the jurors and, addressing them as a group, asked: "How many of you read the Tribune this morning?" Receiving no response, the court again instructed the jurors not to read anything concerning the case in the newspaper. Defendant objected to the method of examination arguing that the jurors should have been questioned individually and moved for a mistrial on that basis. Finally, arguing that the examination of the jurors served to highlight the article and would encourage them to seek it out, the defense made its final motion for a mistrial in the following words: "At this time, Judge, I besiege [*sic*] you, please grant a mistrial."

Later in the day, and during the hearing on the reporter's motion to quash the subpoena requiring his presence, the assistant prosecutor admitted talking to the Tribune reporter and telling him about the deaths of the two elderly witnesses. Although defendant suggests that conversation resulted from a telephone call by the assistant to the reporter, there is nothing in the record before us corroborating that assertion, and the trial court apparently

found to the contrary.

The court thereafter, in chambers with counsel present, examined each juror individually concerning his knowledge of the article, and each denied having read or seen it. The court did not inform the jurors of the content of the article but simply inquired whether they had heard about or read an article in the Tribune "about this case" or "about People v. Mosley." Following argument on defendant's written motion to dismiss the indictment because of the alleged prosecutorial misconduct, the court ruled as follows:

> "There has been no evidence adduced before this Court to prove that the prosecutor, with malice aforethought, or deliberately gave information for the purpose of influencing the jury. However, it is the opinion of this Court that the conduct of the State's Attorney was imprudent, to say the least. It is the duty of this Court to see that all defendants get a fair and impartial trial.
>
> \* \* \*
>
> \* \* \* No evidence has been taken in this matter and the Court feels, in light of these facts, that the Court itself highlighted the article to the jury in the hope of seeking out whether or not the jury was influenced by the article. The Court did highlight that article, but the fact that evidence had not been taken in this case and this case had not, in fact, started, the Court is going to declare a mistrial and will withdraw a juror." ·

Defense counsel then objected to the mistrial declaration urging the court to sequester the jury as an alternative means of insuring the defendant a fair trial, a suggestion to which the prosecutor stated he had no objection. The court then inquired:

> "Gentlemen, are you prepared to make your opening arguments? You realize this jury is going to be sequestered for days?
>
> MR. CANNON [Assistant State's Attorney]: Yes, Judge.
>
> MR. MOORE: [Defense counsel]: Could we have five minutes before we go any further?"

Following a brief recess, defense counsel stated, "Judge, I believe that my objection was a bit premature and I will withdraw my objection to your Honor's declaration to a mistrial. ***" A juror was thereafter excused, a mistrial declared and the case continued to the following day.

When the case was called the next day it became apparent that defendant intended to move for dismissal on double jeopardy grounds, and the case was again put over to the following day to permit preparation of the appropriate motions. On that day the following exchange took place with reference to the June 7 proceedings:

> "THE COURT: *** After a prolonged day of argument, the Court reconsidered its position and reversed its position to the previous motion for mistrial made by the defendant, and the mistrial was granted.
>
> MR. MOORE [Defense Counsel]: I object, your Honor. We never moved for mistrial on that point. Your Honor did that on your own motion.
>
> THE COURT: *** The Court did not do it sua sponte. ***"

Defendant's plea in bar of further prosecution was denied. The trial judge was persuaded, however, to certify the double jeopardy question to the appellate court for interlocutory review despite the fact that our Rule 308 (58 Ill. 2d R. 308) providing interlocutory appeals in civil cases under specified conditions is not one of the rules enumerated in Rule 612 (58 Ill. 2d R. 612) as applicable in criminal cases. That court denied the petition for leave to appeal and these proceedings followed.

The starting point in any double jeopardy analysis, of course, is determining whether or not jeopardy had attached. Since the jury was selected and sworn, it is clear that jeopardy had attached at the time the mistrial was declared. (*Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156; *People v. Watson* (1946), 394 Ill. 177; *O'Donnell v. People* (1906), 224 Ill. 218.) A second trial may still be permissible, however (*Downum v. United*

*States* (1963), 372 U.S. 734, 10 L. Ed. 2d 100, 83 S. Ct. 1033; *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165), and it is necessary to examine the facts and circumstances of each particular case to determine the validity of a double jeopardy claim. (*Illinois v. Somerville* (1973), 410 U.S. 458, 464, 35 L. Ed. 2d 425, 431, 93 S. Ct. 1066, 1070.) Of particular importance in this regard is whether the mistrial may fairly be said to have been attributable to defendant, for where a mistrial is declared upon defendant's motion, a different analysis is applicable. The United States Supreme Court set out the standard in *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, as follows:

"[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557.

We think it may be fairly said here that defendant sought or at least consented to the mistrial which the trial court ultimately declared, even though that mistrial occurred, at least in part, as a result of prosecutorial conduct which would have been better left undone. By so holding, however, we do not intend to condone the conduct of the assistant State's Attorney in furnishing information to the reporter or the subsequent publication of the article, which could have prejudiced members of the jury who saw or read it. Were there in this record any support for the suggestion that the conversation with the reporter was initiated by the assistant prosecutor, our disapproval would take other forms. (*People v. Butler* (1974), 58 Ill. 2d 45, 51-52.) The fact remains, however, that the article's existence was called to the attention of the court by the State, and when the jurors were

questioned individually and as a group none had seen, read or discussed the article. At that point it seems clear that defendant had not been prejudiced by the publication. Because of a fear that the disclosure of the article's existence might, despite admonitions to the contrary, tempt jurors to seek it out or discuss it, the trial judge indicated his intention to declare a mistrial. After defendant suggested sequestering the jury, however, and the prosecutor indicated no objection to doing so, the trial judge appeared to reconsider his position as to a mistrial and to be willing to then proceed with the trial as demonstrated by his inquiry regarding counsel's readiness to proceed with opening statements. It was at this point that defense counsel requested a recess, and, when court reconvened, indicated his objections to the declaration of a mistrial were "premature" and were being withdrawn. Defendant, in our judgment, clearly had his choice: he could either retain the original jury and have them sequestered if he thought that action necessary to insure fairness, or he could accept the declaration of a mistrial which would then entail the selection and swearing of a new jury. "It has been well stated that a defendant cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to subsequent jeopardy." *People v. Benson* (1962), 24 Ill. 2d 159, 162.

The record also establishes the mistrial motions by defendant earlier in this opinion referred to. On four separate occasions defense counsel explicitly requested a mistrial due to either prosecutorial misconduct, fundamental unfairness, or improper inquiry of the jury. While it is not entirely clear from the record that the trial court judge acted upon all of these motions at the time they were made, there can be no doubt that the mistrial eventually declared was the relief requested by defendant on the earlier occasions.

We accordingly conclude that the mistrial may be said

to have resulted from defendant's repeated requests or, at the minimum, to have been declared with his consent. Consequently, the standard set forth in *Jorn* applies, and defendant's double jeopardy plea was properly denied. *People v. Handley* (1972), 51 Ill. 2d 229, 235.

While our holding disposes of the double jeopardy issue in this case, defendant urges that language in several United States Supreme Court opinions, particularly *Abney v. United States* (1977), 431 U.S. 651, 52 L. Ed. 2d 651, 97 S. Ct. 2034, compels Illinois to provide a means of interlocutory appellate review of trial court denials of double jeopardy claims. Implicit in the arguments of both defendant and the State is recognition of the fact that Illinois does not now provide for pretrial review of denied double jeopardy claims as a matter of right. Our constitutionally guaranteed right of appeal embraces only appeals from "final judgments" (Ill. Const. 1970, art. VI, sec. 6; 58 Ill. 2d R. 301), and our cases have consistently defined that phrase in a manner which precludes review, as a matter of right, of denied double jeopardy claims prior to conviction and final judgment thereon. "To be final and appealable, a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment." (*Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48; see also *People v. Miller* (1966), 35 Ill. 2d 62, holding the denial of a motion to dismiss two counts of an indictment is not reviewable.) Defendant also attacks the validity of our system of review because we do provide interlocutory appeals on a discretionary basis in some civil matters, and of specific, narrowly limited trial court actions in criminal and juvenile cases. Defendant urges that the absence of provisions in the criminal appeals rules providing interlocutory appeals similar to those in civil cases violates equal protection and due process principles. Our rules (Rule 307 providing for

interlocutory civil appeals as of right, Rule 308 concerning interlocutory civil appeals by permission, and Rule 604 relating to certain criminal appeals including appeals by defendants from preconviction denial-of-bail orders (58 Ill. 2d Rules 307, 308, 604(c))) and our case law (*People v. Martin* (1977), 67 Ill. 2d 462) do permit interlocutory appeals in certain exceptional circumstances. We do not agree with defendant, however, that exclusion of double jeopardy claims from the orders as to which interlocutory review is afforded is constitutionally impermissible. Because double jeopardy claims occur more than occasionally, however, and because the broad appealability language of *Abney* is arguably mandatory, we believe defendant's contentions merit discussion and resolution.

The *Abney* court addressed the narrow issue of "whether a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is a final decision within the meaning of 28 U.S.C. section 1291, and thus immediately appealable." (431 U.S. 651, 653, 52 L. Ed. 2d 651, 655-56, 97 S. Ct. 2034, 2037.) That section embodies the Federal statutory provision conferring upon the United States Court of Appeals jurisdiction over "all final decisions" of the district courts in both criminal and civil actions. The court in *Abney* concluded that pretrial orders rejecting claims of double jeopardy are "final decisions" within the meaning of section 1291 and thus are immediately appealable.

We do not interpret *Abney* as holding its result to be constitutionally required by either the Federal double jeopardy provisions or due process principles. As the court in *Abney* explicitly recognized, "it is well settled that there is no constitutional right to an appeal" (431 U.S. 651, 656, 52 L. Ed. 2d 651, 657, 97 S. Ct. 2034, 2038), and "[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come

within the terms of the applicable statute ***" (431 U.S. 651, 656, 52 L. Ed. 2d 651, 658, 97 S. Ct. 2034, 2039). *Abney* and the other United States Supreme Court cases relied on by defendant, including the post-*Abney* case of *United States v. MacDonald* (1978), 435 U.S. 850, 56 L. Ed. 2d 18, 98 S. Ct. 1547, interpreted a Federal statute which has no direct parallel in Illinois. Nor is the recent decision in *Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156, helpful to defendant. That case held only that the Federal rule that jeopardy attaches when the jury is impaneled and sworn is an integral part of the constitutional guarantee against double jeopardy and is, therefore, binding on the States via the fourteenth amendment. Such was already the law of this State. *Crist* did not address the issue at hand, *i.e.*, whether denial of a defendant's motion to dismiss an indictment on double jeopardy grounds is or must be appealable.

Certain statements in the *Abney* opinion, when taken out of context, can be argued to mandate interlocutory review of denied double jeopardy claims, *e.g.*: "Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence" (431 U.S. 651, 660, 52 L. Ed. 2d 651, 660-61, 97 S. Ct. 2034, 2041) and "Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs" (431 U.S. 651, 662, 52 L. Ed. 2d 651, 662, 97 S. Ct. 2034, 2042). But when read in the context of the entire opinion, we do not consider *Abney* to invalidate a system such as ours which provides a discretionary review of denied double jeopardy claims rather than a review as of right.

We note the American Bar Association Standards

Relating to the Administration of Criminal Justice do not suggest that an appeal as of right from denied double jeopardy claims is either necessary or desirable. Criminal Appeals Standard 21—1.3(b) states:

> "In general, a defendant should not be permitted to take an appeal until a final judgment adverse to him has been entered in the trial court. Interlocutory review, in the discretion of the appellate court, should be available:
> (i) to review trial court decisions denying claims of procedural rights that cannot be vindicated by appeals from final judgments. Included among such claimed rights are double jeopardy and bail pending trial." (ABA Standards, Criminal Appeals, sec. 21—1.3(b) (1978).)

In fact, defendant concedes a permissive appeal, or a system pursuant to which frivolous appeals are summarily disposed of, would suffice.

A defendant in an Illinois criminal case who has a meritorious double jeopardy defense is not foreclosed from pretrial correction of a trial judge's erroneous denial of a motion to dismiss. A motion under our Rule 381 (58 Ill. 2d R. 381) for leave to file an original petition for a writ of prohibition, *mandamus,* or perhaps even *habeas corpus,* as may be appropriate, accompanied by suggestions in support of the petition will receive the serious consideration of this court. As this case demonstrates, a motion with arguable merit will, in all likelihood, be allowed and the issue decided. The frivolous or nonmeritorious motion will be denied, a system similar to that suggested in *Abney* for coping with the dilatory appeals anticipated as a result of the court's holding. (See 431 U.S. 651, 662 n.8, 52 L. Ed. 2d 651, 662 n.8, 97 S. Ct. 2037, 2042 n.8.) Too, our system protects adequately the interest of a defendant, emphasized in *Abney,* in avoiding the personal strain, public embarrassment and expense of a criminal trial more than once, as well as the "defendant's 'valued right to have his trial completed by a particular

tribunal' " focused upon in *Crist* (437 U.S. 28, 36, 57 L. Ed. 2d 24, 31, 98 S. Ct. 2156, 2161).

We accordingly conclude that the Federal rule which considers denials of double jeopardy claims as final and appealable under the Federal statute is not "an integral part of the constitutional guarantee against double jeopardy" (*Crist v. Bretz* (1978), 437 U.S. 28, 38, 57 L. Ed. 2d 24, 33, 98 S. Ct. 2156, 2162) so as to make it binding on the States, nor do we believe our present system inadequate.

The petition for a writ of *mandamus* is accordingly denied.

*Writ denied.*