THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIRK PARKER *et al.*, Defendants-Appellants.

First District (1st Division)  No. 1—88—1551

Opinion filed August 27, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

Blair, Russell & Cole, of Chicago (Chester L. Blair, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

The defendants, Dirk Parker and Darryl Jackson, were charged by information with aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(1), (a)(4)), aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, pars. 10—2(a)(3), (a)(5)), and armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). The defendants were also charged with the lesser included offenses of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)), kidnapping (Ill. Rev. Stat. 1985, ch. 38, pars. 10—1(a)(3), (a)(2)), and aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)).

The defendants filed a motion to dismiss the charge on the grounds of double jeopardy. The trial court granted the motion, and the State appeals from the order of dismissal pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). The facts pertinent to this appeal are set forth below.

This matter was originally set for trial on November 18, 1987, before Judge Matthew J. Moran after numerous continuances. On that date, both sides answered ready; however, Judge Moran was presiding over another jury trial which was due to be completed the following day. The assistant State's Attorney requested that the case be set for November 30, 1987, which he added was the last day of the

term. Judge Moran expressed a reluctance to set the case on the last day of the term and suggested that jury selection began on November 25, 1987, the day before the Thanksgiving recess. Defense counsel objected to beginning jury selection on that day, contending that the delay between the selection of the jury and the presentation of evidence would be detrimental and unfair to the defendants due to the holiday recess. The State then agreed with the judge, and, thereafter, an exchange of words took place between defense counsel and the court, as set forth below:

"MR. BLAIR [defense attorney]: We are ready for trial. We demand trial, jury trial.

THE COURT: What's the State's position?

MR. RONKOWSKI [Assistant State's Attorney]: Last day of the term is the 30th.

THE COURT: Well, this jury is going out tomorrow morning, so they will be out by 1:00 o'clock. Is the State saying we can hold it on call?

MR. KONCZAL [Assistant State's Attorney]: The problem is if we picked a jury tomorrow we wouldn't be able to start testimony until Thursday. We would really suggest the 30th to the Court, the last date of the term.

THE COURT: I hate to set the last date of the term.

MR. KONCZAL: I asked counsel to go by agreement to that date.

THE COURT: I checked with the jury commissioner, and he sees no problem with picking a jury on the 25th even though there will be no court on the 26th or 27th.

\* \* \*

MR. BLAIR: The defendants here are on trial, and to pick a jury and to have them hanging over the weekend without any evidence coming to them I think would be fortuitous to say the least.

\* \* \*

THE COURT: All right. I disagree. The jury is not going to be sequestered. It's not going to hear any evidence on the date it's picked. All we're going to do is pick the jury and start the testimony on the next open court date.

MR. BLAIR: Which would be the 30th.

THE COURT: Which would be Monday, the 30th.

MR. BLAIR: Well, Judge, let's start at 6:00 o'clock in the morning on the 30th.

MR. KONCZAL: I'll go by agreement with him. I'm not try-

ing to put counsel in a bind. Whatever counsel wants is fine.

THE COURT: Your last date of the term is the 30th.

MR. KONCZAL: Actually it may be the 29th. I would rather pick on the 25th as Your Honor has suggested.

\* \* \*

THE COURT: They are ready to go on the 30th, but they just told me the term may run on the 28th or 29th. So I don't want to get myself in that situation.

MR. BLAIR: The term doesn't run on the 28th or 29th. The term runs on the 30th. I spent the last 20 minutes counting the term. They spent time counting the term. At least that's the way it appears to me.

\* \* \*

THE COURT: I think the Court is responsible too when matters are not properly brought to trial, and I like to see justice done in the courtroom and not individuals convicted or acquitted on technicalities, and I'm not going to be a part of that. I'll set this for the 25th for picking of the jury. If you come in that day and for any good reason do not want to pick the jury until the 30th, I'll set it motion defendant to pick it on the 30th, but I'm not going to take a chance on miscalculation.

MR. BLAIR: Judge, I think that you are now abusing—by that procedure you're abusing the defense for the benefit of the prosecution, and you've just told me—

THE COURT: Sir—

MR. BLAIR: You just told me that you do not intend to abuse either side.

THE COURT: That's true, sir.

MR. BLAIR: You said you do not want them to lose the case on a technicality.

THE COURT: I don't want any case decided on a technicality.

MR. BLAIR: Then you ask me to pick a jury—

THE COURT: I resent your remarks, sir.

MR. BLAIR: Judge, I can understand that. I can understand your resenting them. I resent what is about to happen to my clients. These poor fellows here are before you for justice. We are only asking for the same fairness that you give to the State.

THE COURT: Sir, I resent your remark that I give justice only to the state's attorneys or prosecutors, and I do not give justice to defendants that appear before me.

MR. BLAIR: I didn't say that.

THE COURT: That's your implication, sir, and I resent that, and I don't care if you're going to be head of the top bar association of this state. You are a man well respected, and I've respected you, sir, up until the last few minutes—

MR. BLAIR: You don't respect me anymore?

THE COURT: I do respect you, sir, but I do not respect the remark that you just made that I do not render justice to defendants, and I'm not about to render justice to your clients. I resent that remark.

MR. BLAIR: May we have the record read so that the Court can see that what it's saying is not what I said? May we have the record read? Would you please read back my remarks—[?]

THE COURT: Sir, I have a jury in the back and I intend to proceed with that case. Now if I've offended you, I do so unintentionally, but you have offended me, sir. I'm requesting to hold this case on trial on call everyday until we're ready if that suits your convenience. Otherwise I'm going to set it for the 25th for picking a jury. I can pick a jury on this case tomorrow afternoon. If we're not free or if you're not free, we'll hold it on call day-to-day. I have other cases on the call everyday, but I'll set those aside if you feel that I'm taking advantage of you or your clients.

MR. BLAIR: Well, Judge, that procedure—I'm not talking about the Court, and I think it's unfair to the defendants for the Court to take the remarks that I have made and become disturbed with the case because they are the ones on trial; I'm not, Judge.

THE COURT: I'm not disturbed with the defendants. I am disturbed with the remarks you made. I'm not disturbed with the two defendants. I don't know them at all. I do know you, sir, and I respect you, and I am surprised you could make such a remark.

MR. BLAIR: How can I respond if you never let me tell you what I'm saying, Judge? I said to you that I believe it would be unfair to these defendants to have the case set for the 25th. I stand on that.

\* \* \*

I hope the fact that I have been or am an officer of the Chicago Bar doesn't work against my clients. I never mentioned it. Your Honor says that because of that I should understand this

or thus. I certainly have no special feeling or feel that I have any special benefit that accrues to me. Indeed I'm more humble under the circumstances than I would be otherwise, but I say to you, Your Honor, to set that case on the 25th, the jury would go out the night of the 25th—.

THE COURT: The jury would not go out the 25th. The jury would be excused.

MR. BLAIR: They would go home.

THE COURT: That's right, and instructed to come back on the 30th. I can't see how the defendants or the State would be prejudiced by that procedure.

MR. BLAIR: They will spend the weekend talking about aggravated sexual assault, Judge, and everybody will be giving them their opinions about what aggravated sexual assault is. That's the basis.

THE COURT: If you think the jury is going to disregard the admonitions of the Court, I would allow you to make appropriate motions on the 30th or make an inquiry of whether they discussed the case in violation of the Court's order, but I can't assume the jurors are going to violate the Court's instructions over the Thanksgiving holiday period, sir. If the parties cannot agree on a date, as I indicated I'm concerned about the fourth term matters, and I will set it order of Court for picking of jury on the 25th.

MR. BLAIR: May we have the record reflect that the defendants object?

THE COURT: The record will so show. Counsel's trial demands will also show.

MR. BLAIR: Thank you, Judge.

MR. RONKOWSKI: Is that motion State?

THE COURT: That will be order of court."

The judge persisted in setting November 25, 1987, as the date on which the jury would be selected.

On November 25, 1987, defense counsel arrived at the courtroom approximately one hour late and explained to the court that there were some preliminary matters to be addressed. Judge Moran stated that he would excuse the venire for lunch. Before excusing them for lunch, he administered the oath to them to truthfully answer questions put to them and explained that the jury selection would take place that afternoon. Defense counsel was present during this proceeding. He did not interpose an objection to that swearing of the jury.

After the venire was excused for lunch, defendants presented a motion for substitution of judge based on prejudice which they contend surfaced during the colloquy which took place between defense counsel and Judge Moran on November 18, 1987. At that time the court had scheduled the trial date as November 25, 1987, over counsel's objection. The prosecution objected to the motion on the basis of lack of notice. Defense counsel then pointed out to the court that the motion was timely filed and should be heard by another judge. Judge Moran responded that he had called Judge Phillip Carey, the supervising judge who generally heard such motions, and neither he nor any other judge in the criminal division was in the building. He believed all of the judges had left for the day, it being the day before Thanksgiving. Judge Moran stated that he would rule on the motion when court reconvened at 1 p.m.

Upon reconvening, Judge Moran commented that a notice of motion was not presented to the court or the State. He then proceeded to review the allegations contained in the motion, vehemently denied the allegations, stated that the motion was not supported by a transcript, and that he deemed it to be frivolous and dilatory. He concluded, therefore, that pursuant to case law he was authorized to rule on a frivolous and dilatory motion for substitution of judge without the need to assign it to a different judge for resolution. However, while the record reveals that Judge Moran made these observations about the merits of the pending motion, neither the half sheet[1] nor the transcription[2] reveals that he denied the motion or otherwise ruled on it.[3] Rather, he advised counsel that the motion was deficient in form and substance and agreed to send it to another judge the following Monday if the deficiencies were corrected by then. While the record is not crystal clear on what deficiencies the judge alluded to, it appears that he made reference to the fact that the motion was unaccompanied by a transcript of the November 18 hearing as well as counsel's failure to serve a notice of motion upon the prosecution. The judge also agreed to defer swearing the jury or taking testimony until a ruling was made by another judge on the motion for substitution of judge.

---

[1]The half sheet reflects that on November 25, 1987, "PP, both defts on bond motion for substitution of judge filed ms nolle prosse counts 13 thru 28 and 30 thru 33 ... twelve jurors and two alternates accepted and sworn to try the issue on 11-30-87."

[2]The transcription reveals that not only was the jury selected, but it was sworn to try the issues.

[3]Defendants, however, state in their motion to dismiss that they construed his actions to be a denial of the motion.

Judge Moran, however, proceeded with jury selection, and as each panel was selected, contrary to what he had agreed to do, administered the oath to them to try the issues. The record does not reflect that defense counsel objected to the swearing of the array. The judge then dismissed them for the weekend. Hence, at the time the jury was empaneled, there was pending before the court a motion for substitution of judge.

Next, defense counsel served the State with a notice of motion for substitution of judge to be heard on November 30, 1987. On that date, the same motion and affidavit which had been previously filed were assigned to Judge Carey, who allowed defendant a one-day continuance to obtain the November 18, 1987, transcript. Judge Moran submitted his own counteraffidavit as well as a transcript of those proceedings occurring on November 25, 1987.

Finally, on December 1, 1987, Judge Carey heard arguments on the motion. After reviewing the motion, affidavits and the transcripts of the colloquy between Judge Moran and defense counsel, Judge Carey commented that the statement made by Judge Moran that "he didn't care if [defense counsel] was the president of the Chicago Bar Association" was indicative of hostility. He then ruled that although the record did not indicate that Judge Moran "would not give a fair and impartial trial *** the best interest of justice would be served by assigning this case out to another judge for disposition." In any event, the motion for substitution was allowed and the case reassigned to Judge Romie J. Palmer. The prosecution and defendants ultimately agreed to an order declaring a mistrial and dismissing the jury empaneled by Judge Moran. The case was then continued to January 20, 1988, for the purpose of setting a new trial date.

On February 10, 1988, the defendants filed a motion to dismiss based on double jeopardy, and an amended motion, affidavit, and memorandum of law were filed on March 14, 1988. Defense counsel argued that Judge Moran's conduct constituted judicial overreaching which resulted in a mistrial after jeopardy had attached. After hearing argument on the motion, on April 18, 1988, Judge Palmer concluded that Judge Moran's actions of continuing with and concluding the jury selection process after defense counsel had filed a motion for substitution of judge constituted grounds for double jeopardy. He granted defendants' motion to dismiss. On appeal, we are called upon to determine whether the trial court properly concluded that defendants' trial was barred based on double jeopardy.

■ The double jeopardy clauses of the United States and Illinois Constitutions protect a criminal defendant from being put twice in

462

jeopardy for the same offense. (U.S. Const. amend. V; Ill. Const. 1970, art. I, §10; *United States v. Dinitz* (1976), 424 U.S. 600, 606, 47 L. Ed. 2d 267, 273, 96 S. Ct. 1075, 1079.) This protection has been codified as section 3—4(a)(3) of the Illinois Criminal Code of 1961, which states in pertinent part:

"(a) prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

* * *

(3) [w]as terminated improperly after the jury was impaneled and sworn ***." Ill. Rev. Stat. 1985, ch. 38, par. 3—4(a)(3).

A defendant is placed in jeopardy when the defendant goes to trial whether the trier of fact is a jury or a judge. (*United States v. Jorn* (1971), 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553, 91 S. Ct. 547, 554; *People v. Williams* (1984), 130 Ill. App. 3d 11, 14, 473 N.E.2d 536.) However, in a jury trial jeopardy attaches when the jury is sworn, and in a nonjury trial jeopardy attaches when the first witness is sworn. (See *People v. Friason* (1961), 22 Ill. 2d 563, 177 N.E.2d 230; *People v. Deems* (1980), 81 Ill. 2d 384, 410 N.E.2d 8.) In the present case, a mistrial was declared after the jury was sworn by Judge Moran. Therefore, jeopardy had attached. In *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292, the court held that the determination of whether a second trial is permissible after jeopardy has attached must be made on a case-by-case basis depending on the particular factual matrix at issue.

A different analysis is required in considering this issue where a mistrial has been declared on defendant's motion or with his consent as opposed to when it is granted over his objection. Defendants concede that they consented to the dismissal of the jury. It is their contention, however, that such consent was coerced by judicial overreaching and hence retrial is prohibited.

■ The court in *Jorn* (400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547) set forth the standard to be applied where a defendant requests a mistrial or consents to a mistrial. (*People v. Camden* (1987), 115 Ill. 2d 369, 377, 504 N.E.2d 96; *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 508, 431 N.E.2d 353.) The *Jorn* court held:

"[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *Jorn*, 400 U.S. at 485, 27 L. Ed. 2d

at 556, 91 S. Ct. at 557.

In many instances mistrials are requested by defendants even though the perceived error which necessitated the request was committed by the judge. (*United States v. Scott* (1978), 437 U.S. 82, 93, 57 L. Ed. 2d 65, 76, 98 S. Ct. 2187, 2195.) However, when a motion for mistrial is presented under those circumstances the defendant is considered to have made an election to forgo his right to have his guilt or innocence determined before the first trier of fact. *Scott*, 437 U.S. at 93, 57 L. Ed. 2d at 75-76, 98 S. Ct. at 2195.

In light of the holding in *United States v. Jorn*, a retrial of a defendant is not precluded unless it can be shown that the circumstances which brought about the defendant's motion for a mistrial were attributable to prosecutorial or judicial overreaching or to bad-faith conduct and not simply because a judicial error occurred. (*Orenic*, 88 Ill. 2d at 510.) Therefore, the circumstances under which the defendant can base a double jeopardy claim to bar a second effort to try him are specifically limited to situations in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. (*Oregon v. Kennedy* (1981), 456 U.S. 667, 672, 72 L. Ed. 2d 416, 422, 102 S. Ct. 2083, 2087.) Once a defendant has succeeded in aborting the first trial either by agreement or on his own motion, he may only raise the bar of double jeopardy where the government conduct is intended to "goad" the defendant into moving for a mistrial. *Oregon*, 456 U.S. at 679, 72 L. Ed. 2d at 426-27, 102 S. Ct. at 2091.

■ In the present case, the record reflects that Judge Moran was steadfast in his resolve to select the jury on the eve before Thanksgiving, November 25. He asserted that his concern was not to wait until the last day of the term. Once defense counsel began advocating his reasons for seeking either to try the case on a date certain before the 25th of November or on the Monday following the holiday, the judge's comments suggest that he was offended by counsel's plea to him to render justice to the defendants on the same plane as to the State. It was during such a colloquy that the court negatively referred to the defense counsel's position with the Chicago Bar Association. It was during this colloquy that defendants contend the court's hostility and prejudice came to their attention. Consequently, on the trial date of the 25th of November, defendants sought a substitution of judge pursuant to the statutory provision for cause. (See Ill. Rev. Stat. 1985, ch. 38, par. 114—5.) While the court rejected the motion as being "faulty in form and substance" and defendants viewed this as a denial, such fact is not clear from the record. The court stated the following:

"The court feels this motion is clearly frivolous and clearly dilatory ***. Again, the court reiterates that this motion is faulty in form and in substance. If counsel desires to represent this motion on Monday when the supervising judge will be in the building, the court will entertain the new and amended motion and assign it to Judge Carey for hearing before this jury is finally sworn and before testimony is heard. There is no way the court can assign this to a criminal court judge at this time of the afternoon, on November 25. At this time the court intends to proceed and select a jury in this case."

The U.S. Supreme Court articulated an exposition on what constitutes judicial or prosecutorial overreaching in *Dinitz* (424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075). The court stated:

"It bars retrials where 'bad-faith conduct by judge or prosecut[ion],' *United States v. Jorn* (1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557, threatens the '[h]arrassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." (*Dinitz*, 424 U.S. at 611, 47 L. Ed. 2d at 276, 96 S. Ct. at 1081, quoting *Downum v. United States* (1963), 372 U.S. 734, 736, 10 L. Ed. 2d 100, 102, 83 S. Ct. 1033, 1034.)

The kind of error contemplated by this discussion is that which was "intended to provoke" the mistrial or "motivated by bad faith or undertaken to harass or prejudice" the petitioner. *Lee v. United States* (1977), 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2147; *United States v. DiFrancesco* (1980), 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426.

■ Even if we were to conclude that the trial judge's conduct did constitute judicial overreaching, we do not consider this the kind of factual circumstance which bar reprosecution on double jeopardy grounds. Our supreme court, as previously noted, has held that the rule barring reprosecution of cases is rather limited. The overreaching must either be done for the purpose of provoking a mistrial in order to secure a second—and perhaps more favorable—opportunity to convict the accused or be motivated by bad faith or undertaken to harass or prejudice the accused. The record is devoid of any evidence that the court's intention was to provoke a mistrial. Additionally, the record suggests that the judge's actions were motivated by his sincere but mistaken belief that the term was about to expire and as a judicial officer it was his belief that the prevention of such an occurrence was his responsibility. It is well established that a motion for substitution of judge constitutes a delay attributable to the movant, and hence, tolls

the 120-day provision of the "speedy trial" statute. (*People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 496; *People v. Bombacino* (1972), 51 Ill. 2d 17, 280 N.E.2d 697; *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) In the case at bar the "speedy trial" statute was tolled on November 25, when defendants filed their motion for substitution of judge.

Additionally, the court's pronouncement that the defendants' motion was faulty in form and substance, assuming it referred to the lack of notice and the transcript, was in error since the case was on the trial call, and hence, there was no necessity to provide a notice of motion. (See Cook County Circuit Court Rule 203.) Neither does the statutory provision for substitution of judge require that a motion be accompanied by a transcript. (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c).) The only requirement is that it be accompanied by an affidavit, which it was. The record when reviewed in totality reveals that the comments made by both defense counsel and the court oftentimes misstated and/or misconstrued what the other one said. The court's injudicious remark regarding counsel's position with the bar association was unfortunate. However, such a remark was not crucial to the issues in this case. The judge was obviously irritated because he felt his comments were being misstated. Consequently, after reviewing the record and circumstances of this case, we cannot conclude that the judge's conduct was "intended to goad" the defendants into moving for a mistrial. *Oregon,* 456 U.S. at 679, 72 L. Ed. 2d at 426-27, 102 S. Ct. at 2091.

When Judge Moran failed to initially assign the motion to a different judge and continued with jury selection, he appeared to be genuinely concerned about setting a case on the last day of the term and wanting to expeditiously dispose of the matter. Further, defense counsel in conjunction with the prosecution stipulated to a mistrial. Even if Judge Moran committed an error, during the November 18, and November 25, 1987, proceedings, "[m]ere error by a trial court does not amount to 'judicial overreaching' so as to bar the reprosecution of a defendant who has requested a mistrial." *Orenic,* 88 Ill. 2d at 511; *Dinitz,* 424 U.S. at 611, 47 L. Ed. 2d at 276, 96 S. Ct. at 1081.

Accordingly, upon a thorough review of the facts in this case, we hold that Judge Moran's actions did not constitute judicial overreaching nor did the evidence reveal that his conduct was intended to abort the trial or provoke defense counsel into moving for a mistrial. Judge Palmer entered an order dismissing the jury impaneled by Judge Moran resulting in a mistrial based on a stipulated agreement between defense counsel and the prosecution.

We further conclude, therefore, that under the facts of this case, the double jeopardy clause does not bar the reprosecution of the defendants. As noted above, although there may have been judicial error as well as injudicious and improper remarks, the facts do not bear out that the trial court deliberately undermined the integrity of the first proceeding.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for trial.

Reversed and remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.