THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH WILLIAMS *et al.,* Defendants-Appellants.

First District (5th Division)   Nos. 83—1720, 83—1721 cons.

Opinion filed December 28, 1984.

Maurice Scott, Jr., of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Mary Ann Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendants Frankie Jackson and Kenneth Williams appeal, pursuant to Supreme Court Rule 604(f) (87 Ill. 2d R. 604(f)), from the trial court's denial of their motion to dismiss based on former jeopardy. Defendants herein were represented at trial by Attorney Scott, and were tried together with two other defendants, Tyrone Williams and Fareed Rasheed, who were represented by Attorney Slaughter; the latter two defendants are not parties to this appeal. Facts pertinent to our disposition follow.

In December of 1981, defendants were charged by information

with aggravated battery, aggravated kidnaping, unlawful restraint and armed violence. (Ill. Rev. Stat. 1981, ch. 38, pars. 12—4(b)(1), 10—2(a)(5), 10—3, 33A—2.) They waived a preliminary hearing and filed motions for discovery. The State responded in January of 1982, by way of a "bill of particulars," that the offense occurred at 347 South Homan at 5 p.m. on October 13, 1981. In July 1982, defendants filed notices that they would rely upon an alibi defense which placed them at the Area 4, Eleventh District police station between 4:30 and 6:30 p.m. on the date of the offense.

On February 1, 1983, the case was called for trial and defendants waived a jury. After a brief opening statement by the prosecutor, the State called the victim as its first witness. The victim testified that between noon and 1 p.m. on October 13, 1981, seven men forced him into an automobile at the corner of Franklin and Sacramento streets. He was beaten while in transit to the 300 block of South Homan, where the seven dragged him to a second-floor apartment, where they further beat and kicked him for about an hour. With all seven men present, he was tied, shot, gagged and thrown into a closet. The victim named all seven men and identified the defendants herein as two of those seven. The latest time the victim estimated he could have seen those seven men was 3 p.m.

Later, having worked free from the gag, the victim yelled and a different man opened the closet door and struck him across the chest with a bat. The man, Walter, left the closet door ajar to accommodate the victim's wounded leg. Still later, Walter helped him from the closet, laid him on a bed, and put a mattress over him. The victim's next remembrance was the police.

When the prosecutor completed direct examination, Attorney Scott moved to dismiss the complaint as to all four defendants on grounds of surprise and prejudice caused by the discrepancy between the State's pretrial disclosure and the State's proof at trial. Defendants argued that they had prepared their alibi defense in reliance upon the State's disclosure that the crime occurred at 5 p.m., but that their alibis were inadequate in light of the victim's testimony that the offense occurred at about 1 p.m. The State opposed the motion, stating that the discrepancy as to time was not fatal to the information, and that defendants would not be prejudiced. During argument on the motion it became clear that a supplemental police report, consistent with the victim's trial testimony, had not been tendered to defendants. At this point, the trial court granted a short recess.

After recess, the State made an offer of proof to the effect that disclosure of the wrong time had been an innocent mistake. The trial

judge stated that he was convinced the discrepancy was inadvertent, but further opined that "manifest necessity" required that he declare a mistrial to afford defendants an opportunity to prepare an adequate defense. The assistant State's Attorney suggested that a continuance would remedy defendant's surprise; he said that the State would not object to a continuance here. Attorney Slaughter responded,

> "Judge, I think that the court's ruling is more appropriate and the reason that I feel so is because to continue it would allow the direct testimony to stand. On the mistrial the witness would have to testify again I believe. If the State is going to prosecute the case, of course, he would have to testify again as to his direct testimony; and I think that if that is going to be the court's remedy, that that is the only proper way to do it and not merely to continue the case."

Attorney Scott was silent. The trial court then declared a mistrial.

The case was again called for trial in June 1983, and defendants moved to dismiss the charges based on former jeopardy. The trial court denied the motion on June 9, and defendants filed their notices of appeal on July 15, 1983.

OPINION

■ At the threshold, we note that defendants apparently filed their notices of appeal after the expiration of the 30 days provided by rule, and without any motion to file a late notice of appeal. (87 Ill. 2d R. 606(b) and (c).) However, our supreme court has held that the *sua sponte* dismissal of an appeal constitutes an abuse of discretion where the defendants' noncompliance is technical or minor and where the appellate court has allowed the appeal to be briefed and argued over an extended period of time before the dismissal. (See *People v. Williams* (1974), 59 Ill. 2d 243, 320 N.E.2d 13; *People v. Brown* (1973), 54 Ill. 2d 25, 294 N.E.2d 267. But see *People v. Brown* (1973), 54 Ill. 2d 25, 27-28, 294 N.E.2d 267 (dissent).) In this case, defendants advised the trial court within 30 days of their intention to appeal, and they filed their notices six days late. Because the parties have submitted their briefs and argued orally, the issue is ripe for decision, and we will reach the merits.

The Bill of Rights provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb ***." (U.S. Const., amend V.) The double jeopardy clause applies in State proceedings as a matter of fourteenth amendment due process. (*Benton v. Maryland* (1969), 395 U.S. 784, 794, 23 L. Ed. 2d 707, 715, 89 S. Ct. 2056, 2062.) The Illinois Constitution provides in part: "No per-

son shall *** be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, sec. 10.) These provisions are essentially coextensive (*People v. Laws* (1963), 29 Ill. 2d 221, 224, 193 N.E.2d 806, 195 N.E.2d 393), and are founded on the principle, fundamental to Anglo-American jurisprudence, that

> "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223, *quoted in People v. Deems* (1980), 81 Ill. 2d 384, 388, 410 N.E.2d 8, *cert. denied* (1981), 450 U.S. 925, 67 L. Ed. 2d 355, 101 S. Ct. 1378.

A defendant is "placed in jeopardy" when he or she is put to trial (*United States v. Jorn* (1971), 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553-54, 91 S. Ct. 547, 554); technically, jeopardy attaches when the jury is sworn (*People v. Friason* (1961), 22 Ill. 2d 563, 565, 177 N.E.2d 230), or in a nonjury trial, when the first witness is sworn. (*People v. Deems* (1980), 81 Ill. 2d 384, 389, 410 N.E.2d 8, *cert. denied* (1981), 450 U.S. 925, 67 L. Ed. 2d 355, 101 S. Ct. 1378.) The instant facts leave no doubt that defendants were subjected to jeopardy in the initial proceeding, in that the State elicited substantial inculpatory testimony from an important witness. The finding that jeopardy has attached does not by itself bar retrial; rather, it presents the issue whether retrial will be barred.

The United States Supreme Court has long recognized that double jeopardy "does not mean that every time a defendant is put to trial before a competent tribunal he [or she] is entitled to go free if the trial fails to end in a final judgment." (*Wade v. Hunter* (1949), 336 U.S. 684, 688, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837.) The court reasons that society has a strong interest in administering criminal justice so that trials will proceed to full, fair and final verdicts, but that criminal trials are complex, and errors may occur which do not implicate the oppressive practices targeted by the double jeopardy clause. (See *Arizona v. Washington* (1978), 434 U.S. 497, 505, 54 L. Ed. 2d 717, 728, 98 S. Ct. 824, 830; *United States v. Jorn* (1971), 400 U.S. 470, 479-80, 27 L. Ed. 2d 543, 553-54, 91 S. Ct. 547, 554-55; *Wade v. Hunter* (1949), 336 U.S. 684, 688-89, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837.) Accordingly, a defendant's motion for mistrial is generally considered to remove the double jeopardy bar, and the State is enti-

tled to retry the defendant even though the error which prompted the motion is attributable to the State. See *Oregon v. Kennedy* (1982), 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083.

A more difficult question arises where a mistrial is declared without the defendant's consent. In such a case, the balance weighs more heavily in favor of the defendant, because the risks sought to be avoided by the double jeopardy prohibition are subtle (see, *e.g., Carsey v. United States* (D.C. Cir. 1967), 392 F.2d 810, 813-14 (concurrence)), and because the prohibition is "not against being twice punished, but against being twice put in jeopardy." (*United States v. Ball* (1896), 163 U.S. 662, 669, 41 L. Ed. 300, 302, 16 S. Ct. 1192, 1194.) In determining whether the double jeopardy clause permits retrial after the declaration of a mistrial without defendant's consent, the Supreme Court has concurrently adhered to the principle enunciated by Mr. Justice Story over a century and a half ago in *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165:

> "the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes \*\*\*." (Emphasis added.)

A cursory reading of the record indicates that the mistrial at issue was declared upon the trial court's motion, hence reprosecution would be barred unless there was a "manifest necessity" for the mistrial. At oral argument, the State conceded that this mistrial was not supported by a manifest necessity, and our reading of the record in light of Illinois discovery law (see, *e.g.,* 87 Ill. 2d 412(a), 412(f) and 415(g); *People v. Weaver* (1982), 92 Ill. 2d 545, 558-60, 442 N.E.2d 255; *People v. Petropoulos* (1965), 59 Ill. App. 2d 298, 323-24, 208 N.E.2d 323, *aff'd* (1966), 34 Ill. 2d 179, 214 N.E.2d 765) leads us to believe that manifest necessity is at least problematic here. However, the dispositive issue in this appeal is whether defendants consented to a mistrial.

Attorney Slaughter orally argued the appeals of defendants Kenneth Williams and Frankie Jackson, although he had defended Tyrone Williams and Fareed Rasheed at trial. He stated that he spoke on behalf of all four defendants when he argued to the trial court "that the court's ruling is more appropriate," and "if [mistrial] is going to be

the court's remedy, that that is the only proper way to do it and not merely to continue the case." Attorney Slaughter argued to us that he intended to agree only to the trial court's *sua sponte* declaration of a mistrial, and that his comments should be understood as preferring mistrial over continuance, but not as a consent to a mistrial. He stated further that the defense repeatedly objected to the mistrial, and the following day, defendants submitted a written motion renewing their prayer for dismissal.

The record fails to support counsel's representations in this court. No objection, argument, qualification or comment appears in the record other than the passage which we quoted at length earlier. There is no indication in the record that defense counsel renewed their motion to dismiss, in writing or otherwise, as a response to the declaration of a mistrial. The motion to dismiss based on former jeopardy was filed four months later, at the start of the second trial, and of course, that motion assumed the effective termination of the first trial.

As to the contention that Attorney Slaughter's statement did not amount to consent, we disagree. In *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292, our supreme court found adequate consent to a mistrial under more ambiguous circumstances than we. After the mention of a news article about the case, the trial court there asked defense counsel for a motion, and counsel responded that the motion was for a mistrial; defendant then submitted a written motion to dismiss the indictment. Following a lengthy hearing, the court declared a mistrial, but defendant objected. Defendant later withdrew his objection, but couched his withdrawal in terms which suggested that the mistrial was declared *sua sponte*. (74 Ill. 2d 527, 534, 387 N.E.2d 325.) The *Mosley* court held that retrial was not barred, and stated, "We think it may be fairly said here that defendant sought *or at least consented* to the mistrial which the trial court ultimately declared, even though that mistrial occurred, at least in part, as a result of prosecutorial conduct which would have been better left undone." (Emphasis added.) 74 Ill. 2d 527, 535, 387 N.E.2d 325.

Similarly, in *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 431 N.E.2d 353, our supreme court found sufficient consent to a mistrial declared by reason of erroneous jury instructions. At trial in that case, defense counsel made his motion in the alternative: first, to give additional instructions; second, to dismiss; or third, for a mistrial. The inclusion of the mistrial alternative was largely at the behest of the judge and prosecutor. When the trial court denied the first two alter-

native motions and declared a mistrial, defense counsel responded, "Judge, we think also the mistrial should really be on the Court's motion, since we don't think we were the cause of the mistrial." (88 Ill. 2d 502, 506, 431 N.E.2d 353.) The supreme court noted that this language did not amount to a withdrawal of the motion or an objection to the entry of a mistrial, and again the court found that defendant "at least consented" to the mistrial. 88 Ill. 2d 502, 508-09, 431 N.E.2d 353.

■ We believe that *Mosley* and *Orenic* stand for the proposition that a defendant's explicit approval of a mistrial declaration will constitute consent so as to avoid the bar of double jeopardy. Although defendants herein did not move for a mistrial, this record reveals explicit approval amounting to consent. Attorney Slaughter argued to the trial court that he thought a mistrial was "more appropriate" and "the only proper way to do it." Assuming, *arguendo*, that these words were intended by Attorney Slaughter to express no more than a preference for *sua sponte* mistrial over continuance, we fail to see how such a "preference" can be interpreted as withholding consent. Notably, we do not hold that Attorney Scott's silence constituted consent: the usual case of consent to mistrial involves a motion by defendant, and our research has uncovered no case in which silence was held to be a consent to mistrial so as to permit retrial. Rather, we hold that Attorney Slaughter's statement on behalf of all four defendants amounted to consent to this mistrial.

For the foregoing reason, we affirm the trial court's order denying defendants' motion to dismiss based on former jeopardy.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.