THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JULIE CAMDEN, Defendant-Appellant.

Fifth District    No. 5—84—0765

Opinion filed January 28, 1986.

482

KARNS, J., dissenting.

Robert L. Douglas and Fred W. Johnson, both of Law Offices of Robert L. Douglas, Ltd., of Robinson, for appellant.

Jon C. Anderson, State's Attorney, of Robinson (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant was charged by information with the offense of attempted murder based upon an incident which occurred in a tavern in Crawford County. The defendant affirmatively raised the defense of diminished capacity along with other affirmative defenses prior to trial. The case proceeded to trial on June 25, 1984, a jury was sworn, and the State presented its evidence, and then rested. Thereafter, defendant began presentation of its case in chief. On June 28, 1984, during a meal recess, one of the jurors indicated to the sheriff of Crawford County, Richard Hunnicutt, that he was concerned over his ability to render an impartial verdict in the case because of a prior drinking problem. The sheriff reported the incident to the trial judge, A. Hanby Jones, who thereafter held a hearing in his chambers.

Judge Jones first examined Sheriff Hunnicutt, who testified that he had just been with the jurors during a luncheon recess at the Elk's Club in Robinson. In the sheriff's words, a juror by the name of Hatton told him that "[h]e could not give a partial [sic] judgment because of his drinking problem in later years." The Sheriff added that the juror told him that because he had been a heavy drinker, he could not be impartial. The sheriff went on to state that the other jurors over-

heard every word of this conversation, which prompted some discussion among them.

The judge next examined the juror, Donald D. Hatton, who confirmed that he told the sheriff that because of his problem, he had reservations about his ability to be fair. Hatton stated that the other jurors overheard him. In particular, the alternate juror told him: "You're going to stick it to me yet." The judge thanked Hatton for his honesty, and commented that his only concern was whether Hatton's remarks influenced any of the other jurors. The court then inquired if the State's Attorney had any questions of the juror and the following colloquy ensued:

> "STATE'S ATTORNEY: You're saying that you had a prior drinking problem?
>
> JUROR HATTON: Yes, definitely. Really did.
>
> STATE'S ATTORNEY: Why would a prior drinking problem affect your deliberation?
>
> DEFENSE COUNSEL: Judge, I object. That's just improper. You've conducted your inquiry. We've got our record—
>
> THE COURT: Do you have any questions?
>
> DEFENSE COUNSEL: Absolutely no questions."

At the conclusion of Juror Hatton's testimony, the following exchange occurred:

> "DEFENSE COUNSEL: Thank you, Mr. Hatton. I think Jon [State's Attorney] and I ought to talk. It might save the county a lot of money.
>
> STATE'S ATTORNEY: Put that on the record.
>
> DEFENSE COUNSEL: Put that on. Ten minutes to talk?
>
> THE COURT: Yes, sir."

Following the recess, the court informed the jury that it was declaring a mistrial. In the wake of this announcement, the following discussion took place between the State's Attorney and defense counsel:

> "STATE'S ATTORNEY: Your Honor, I don't believe we ever had any problem with the Speedy Trial Act. I don't know if the—or what his schedule is; and I would probably suggest that this cause be set for trial in what, September?
>
> DEFENSE COUNSEL: We just got a mistrial. It may be even assigned to another judge's docket.
>
> THE COURT: I would say that would probably be the case.
>
> DEFENSE COUNSEL: There is no demand for speedy trial on file. I will advise the court.
>
> STATE'S ATTORNEY: Yes, there is. There is one on file.

DEFENSE COUNSEL: We waive it.

STATE'S ATTORNEY: Okay, then I want you to waive it on the record.

DEFENSE COUNSEL: I waive it. The speedy trial demand is waived."

On July 19, 1984, the case was set again for jury trial, by agreement, for November 13, 1984. On August 30, 1984, the defendant filed a motion for substitution of judge.

On September 11, 1984, the defendant filed a motion to dismiss on the ground that the mistrial had been declared without affording her an opportunity to object. A hearing was held on this motion on October 31, 1984, and the matter was taken under advisement. In an order filed November 7, 1984, Judge Robert M. Keenan, Jr., who was not the trial judge, denied the defendant's motion to dismiss, finding that she consented to the mistrial. In making this determination, Judge Keenan stated:

"While defendant did not request the mistrial, I deem the record to show consent. After the court heard evidence, the State's Attorney and Defense Counsel apparently had a discussion. After that talk, the content of which is not part of the record, the court announced a mistrial and discharged the jury.

Defendant, although present with counsel, did not object to the declaration. Perhaps, she had no duty to object, although that question is also not before the court. What did occur is that Mr. Anderson [State's Attorney] asked the court to set a new trial date. Mr. Douglas [defense counsel] obviously anticipated going to trial again and stated that the case might be assigned to another judge. Mr. Douglas with Defendant present then waived the prior demand for a speedy trial.

Under these circumstances, there having been no objection to the granting of a mistrial and Defendant, through counsel, having waived the speedy trial demand, Defendant consented to the allowance of a mistrial and may not now raise the issue."

Defendant thereafter filed an interlocutory appeal pursuant to Supreme Court Rule 604(f) (87 Ill. 2d R. 604(f)) from the denial of her motion to dismiss on the grounds of double jeopardy.

■ The constitutional prohibition against double jeopardy represents a policy of finality in criminal prosecutions to protect defendants from being forced to go through a trial more than once. (*United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547.) In the case at bar, where the jury had already been impaneled and ev-

idence taken, jeopardy had clearly attached at the time the first trial ended. (*People v. Johnson* (1983), 113 Ill. App. 3d 367, 374, 447 N.E.2d 502, 507.) A second trial, however, is not necessarily barred merely because jeopardy had attached in the first proceedings. It depends upon the circumstances of each case. (*People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 534-35, 387 N.E.2d 325, 328, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292.) Where a mistrial has been declared on defendant's motion or is attributable in some manner to the defendant, reprosecution is not barred, as defendant cannot, by his or her own act, avoid the original jeopardy and then assert it as a bar to subsequent proceedings. (*People v. Johnson* (1983), 113 Ill. App. 3d 367, 375, 447 N.E.2d 502, 507.) If the defendant has either initiated or consented to the declaration of a mistrial, even where the alleged error necessitating the mistrial was the prosecutor's or the judge's, reprosecution may be permissible absent prosecutorial or judicial overreaching or bad faith. (*People v. Rogers* (1984), 123 Ill. App. 3d 780, 787, 463 N.E.2d 211, 216; *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 509-10, 431 N.E.2d 353, 356-57; *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547.) In some circumstances, a declaration of mistrial will not prevent a second trial, even though defendant objects, if the jury was discharged because of "manifest necessity." *People v. Johnson* (1983), 113 Ill. App. 3d 367, 375, 447 N.E.2d 502, 507; *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165.

■ In the case at bar, the record is clear that the defendant did not move for a mistrial. Unless defendant can be said to have consented to the declaration of the mistrial, the question of whether a retrial is possible depends on whether there was a "manifest necessity for the mistrial. We turn first to the question of whether defendant consented to the mistrial. The trial court, in denying defendant's motion to bar further prosecution, found that while defendant did not request the mistrial, she impliedly consented to the mistrial by failing to object to the court's declaration of a mistrial. The trial court found that by not objecting to the granting of a mistrial and by waiving the speedy-trial demand through counsel, defendant consented to the allowance of a mistrial and could not now claim double jeopardy. We disagree. Defendant's silence and failure to object to the court's declaration of a mistrial *sua sponte* does not constitute consent to a mistrial so as to permit retrial. See *People v. Williams* (1984), 130 Ill. App. 3d 11, 17, 473 N.E.2d 536; *People v. Wiley* (1979), 71 Ill. App. 3d 641, 389 N.E.2d 1283.

■ Where a mistrial is declared without the defendant's consent,

the balance weighs more heavily in favor of defendant, because the risks sought to be avoided by the double jeopardy prohibition are subtle and because the prohibition is not against being twice punished, but rather against being twice put in jeopardy. (*People v. Williams* (1984), 130 Ill. App. 3d 11, 15, 473 N.E.2d 536, 539.) The purpose of the double jeopardy clause is to protect the defendant's valued right to have a trial completed by a particular tribunal, and the right is not limited to cases of prosecutorial or judicial overreaching, but applies to any situation in which a mistrial is improperly declared without the defendant's consent. *People v. Cobb* (1974), 19 Ill. App. 3d 520, 523, 311 N.E.2d 702, 704.

In the case of *People v. Cobb* (1974), 19 Ill. App. 3d 520, 311 N.E.2d 702, the defendants were charged with armed robbery. A mistrial was later declared during the first trial on the defendants' motion because the State failed to comply with a defense discovery request. A second trial followed, and pursuant to defendants' suggestion, both the State and the defense stipulated that the jury from the first trial should be used. The jury was impaneled and sworn, and at that point the State objected for the first time to the composition of the jury. The court denied the objection, but after a recess the court announced that having reconsidered the State's objection he was declaring a mistrial. Defendants objected, stating that they were ready for trial and moved for dismissal of the charges against them, claiming double jeopardy. The case was continued for reassignment to another judge to hear defendants' motion. After hearing defendants' motion, the court entered an order barring further prosecution of defendants for the offense with which they were charged and directed their release from custody. On appeal, the State argued that reprosecution should not be barred because the mistrial did not result from any prosecutorial misconduct intended to harass defendant, and the delay in selecting a new jury would have been minimal. The court in *Cobb* stated:

"However, neither misconduct on the part of the State, nor the difficulty in selecting another jury, has any bearing on the matter. As stated in *United States v. Jorn*, 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, the purpose of the double jeopardy clause is to protect a defendant's valued right to have a trial completed by a particular tribunal, and the right is not limited to cases of prosecutorial or judicial overreaching, but applies to any situation in which a mistrial is improperly declared without defendants' consent." *People v. Cobb* (1974), 19 Ill. App. 3d 520, 523, 311 N.E.2d 702, 704.

■■ ■ Finding that the initial proceedings in the case at bar were aborted by the trial court, without the defendants' consent, we next examine the second prong of the test to determine whether reprosecution is barred after the trial court's declaration of a mistrial. As we noted earlier, second trials have been allowed in instances where the trial judge's termination of the initial trial was based upon a "manifest necessity," or where the ends of public justice would otherwise be defeated. (*United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165.) The standard of "manifest necessity" was first promulgated in *Perez* and, as recently stated by the Supreme Court in *Jorn*, it "stands as a command to trial judges not to foreclose the defendant's option [of having his trial completed by the initial tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." (*United States v. Jorn* (1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 557, 91 S. Ct. 547, 557.) Therefore, if the termination of the proceedings in the case at bar was the result of judicial indiscretion, *Perez* and *Jorn* mandate that the defendant not be subjected to reprosecution. (*People v. Wiley* (1979), 71 Ill. App. 3d 641, 644, 389 N.E.2d 1283, 1286.) To justify a declaration of a mistrial under the *Perez* rule, it must appear that an impartial verdict cannot be reached or, if a verdict of conviction could be reached, that it would have to be reversed on appeal due to an obvious procedural error. (*People v. Cobb* (1974), 19 Ill. App. 3d 520, 522, 311 N.E.2d 702, 703-04; *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066.) Under these rules, from our review of the record, we find no allegation of any procedural error necessitating mistrial and the only other basis on which manifest necessity for a retrial could be based is that an impartial verdict could not be reached. We believe that the trial judge acted too hastily in this case in declaring a mistrial. A trial judge has a duty to exercise the utmost caution when contemplating a declaration of a mistrial and the power "ought to be used with the greatest caution, under urgent circumstances and for very plain and obvious causes \*\*\*." (*United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165.) Where the court has acted properly, retrial of the defendant is not barred; however, double jeopardy bars further prosecution where the trial court has abused its discretion and a mistrial has been declared improperly. *People v. Johnson* (1983), 113 Ill. App. 3d 367, 375, 447 N.E.2d 502, 507-08; *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547.

■■ The judge in the instant case abused his discretion when he

*sua sponte* aborted the proceedings and declared a mistrial without affording either the State or the defendant the opportunity to object or even placing the State or defendant on notice of his intentions to abort the proceedings. There were other alternatives which the trial court could have exercised in the event that it found Juror Hatton no longer able to sit on the jury. At no point did the trial judge poll the other jurors to determine whether they had even heard any of the statements of Juror Hatton and, if so, if they were prejudiced or biased as a result. The remaining jurors could have been polled, the alternate could have been seated or the State and defendant could have stipulated to a continuance of the trial with 11 jurors. The trial court explored none of these possibilities nor even mentioned them. The trial judge acted too hastily in making his determination that an impartial verdict could not be reached and based on the sparse record that we have before us, there is no evidence that the other jurors were in any way tainted or that an alternate could not serve in the event that Juror Hatton were removed.

For the foregoing reasons, we reverse the decision of the trial court denying defendant's motion to bar further prosecution and remand this case to the trial court with directions to dismiss the charges and discharge the defendant.

Interlocutory order reversed; cause remanded with directions.

WELCH, J., concurs.

JUSTICE KARNS, dissenting:

The conduct of defendant convinces me that defendant acquiesced in and consented to the declaration of mistrial. The conduct of her counsel in open court, after an off-the-record discussion with the State's Attorney and after defense counsel stated to the court that "Jon and I ought to talk. It might save the county a lot of money," evinces consent by conduct, particularly so in the absence of any objection after the lengthy colloquy between counsel and the court. Counsel had objected to the questioning of the juror, Hatton, by the State's Attorney, who was attempting to establish the necessity or lack of necessity for a mistrial, and declined to examine him. She then waived her speedy-trial rights when the discussion turned to setting the case for retrial. Two months later a motion for substitution of judges was filed.

Cases are collected in the annotation at 63 A.L.R.2d 782 (1959), where the courts considered whether failure to object constituted con-

sent which waived the constitutional protection against double jeopardy and where conduct of counsel in the presence of the defendant has been held to constitute implied consent. Illustrative is *Baker v. State* (1972), 15 Md. App. 73, 289 A.2d 348, where counsel for one defendant objected to the court ascertaining precisely what a juror had overheard in argument on a motion. The court held that the trial court did not abuse its discretion in declaring a mistrial, as conduct of counsel made it evident that he wanted a mistrial and had no objection, and under the circumstances it could have been prejudicial to the other defendant to continue the trial with the one defendant removed from the case. The *Baker* opinion reviews in detail the relevant Supreme Court opinions and concludes that the test, where the court grants a mistrial *sua sponte,* is whether the court abused its discretion considering the facts present in the particular case. (*United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; *Gori v. United States* (1961), 367 U.S. 364, 6 L. Ed. 2d 901, 81 S. Ct. 1523.) The factual circumstances in each case are necessarily unique. I consider no abuse of discretion here, even though the trial court, as in *Baker* should have examined the jurors in detail to determine if in fact any prejudice would have resulted if the trial were to continue. Nor do I find *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325, and *People v. Williams* (1984), 130 Ill. App. 3d 11, 473 N.E.2d 536, contrary to the views here expressed.