THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE COOPER, Defendant-Appellant.

First District (6th Division)   No. 1—88—0132

Opinion filed March 1, 1991.

EGAN, J., concurring in part and dissenting in part.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant was found guilty of murder and sentenced to a term of 35 years. The issues raised on appeal are: (1) whether the trial court's declaration of a mistrial violated the prohibition against double jeopardy; (2) whether compelling Aaron Cooper to testify violated defendant's right to due process; (3) whether testimony regarding Aaron Cooper's statements incriminating defendant violated the hearsay rule as well as defendant's right to confrontation, cross-examination and due process; (4) whether compelling Aaron Cooper to invoke his fifth amendment privilege before the jury had the effect of suggesting that defendant was guilty; (5) whether the trial court's refusal to let defense counsel ask Aaron Cooper certain questions violated defendant's right to cross-examination; (6) whether the prosecutor's redirect examination of Aaron Cooper regarding his taped conversation with defense counsel denied defendant a fair trial; (7) whether testimony

about Annette Dorenzo's out-of-court statements violated the hearsay rule and defendant's right to confrontation, cross-examination and due process; (8) whether testimony and comments concerning other crimes by defendant denied him a fair trial; (9) whether the evidence of the grand jury subpoena, and arrest and search warrants, should have been admitted; (10) whether the State's arguments were proper; and (11) whether the trial court erred in limiting defendant's opening statement, cross-examination and closing argument as to other persons who may have committed the crime.

The evidence at trial established that sometime after 10 p.m. on October 13, 1986, the victim, Rodney Williams (also known as Pretty Boy), was found shot to death in an empty apartment located at 1376 West 79th Street in Chicago. When the police arrived at the scene of the crime they interviewed several people in the building, including Annette Dorenzo. Dorenzo testified that defendant and the victim had been at her apartment earlier that evening and that they both left at around 10 p.m. During the next few days, the police tried to locate defendant but they were unsuccessful.

During the early morning hours of October 26, 1986, the police responded to a report of domestic disturbance at 1262 West 72nd Place. Josephine Cooper, the defendant's mother, had asked the police to arrest her son, Aaron Cooper, for disorderly conduct. According to Officer Getting's testimony, Aaron Cooper became angry and made the statement that the police should be locking up defendant instead of him. Aaron Cooper then told his mother that he was going to tell the police everything because they should be getting her "killer son." Cooper also asked Gettings and the other officers with him if they knew about the killing of Pretty Boy several weeks earlier. Aaron Cooper then told the police that his brother had committed the crime. On the way to the police station, Aaron Cooper stated several times that defendant had killed the victim, and at the station, he asked to speak with the detectives who were familiar with the Williams murder. On October 26 and 27, 1986, Cooper stated on four other occasions that defendant had shot the victim. The fourth instance was as part of his testimony before the grand jury.

Aaron Cooper's testimony before the grand jury, which was later admitted into evidence through the trial testimony of the grand jury court reporter, was that defendant had collaborated with the victim and two other people to sell narcotics. Defendant made a sale to a fifth party but sold them baking soda instead of narcotics. He then refused to share the money he received from the sale with his collaborators and also refused to give them the narcotics he had replaced. In

retaliation, the purchaser, victim and several other people beat defendant with a baseball bat. After the beating, defendant told Aaron Cooper that he would kill all of the people involved. Several days later, defendant told Cooper to stay away from 79th Street because defendant had shot "Pretty Boy." Aaron Cooper had also testified that he saw his mother the next day, and that she had a gun protruding from her purse. He stated that, to the best of his knowledge, his mother kept handguns in a safe deposit box at the Chicago Bank of Commerce. Finally, Cooper acknowledged that he was testifying before the grand jury of his own free will.

Defendant was arrested on December 29, 1986. On May 19, 1987, Aaron Cooper contacted defendant's attorney and recanted his prior statements implicating defendant in the victim's murder. A tape recording of Cooper's conversation with defendant's attorney was made which was subsequently admitted into evidence and heard by the jury at the trial. In this conversation, Cooper stated that he had been drinking all day when he was arrested for disorderly conduct and had no recollection of making statements to the police implicating defendant in the victim's murder. He also stated that he made the same statements in his testimony before the grand jury because of threats that his sentence for an unrelated conviction would be extended.

The trial was scheduled to begin on November 16, 1987, and the jury had been selected. However, Aaron Cooper and his mother, Josephine Cooper, had been subpoenaed by the State to testify and indicated at a pretrial proceeding that they intended to invoke their fifth amendment privilege against self-incrimination. At this point, the trial was postponed several days while the court heard the parties' pretrial motions and conducted a hearing to determine whether Josephine or Aaron Cooper could claim the fifth amendment privilege. On November 19, 1987, there were still pretrial matters remaining. The trial judge and the State commented that the jury had been waiting several days for the trial to begin and had sent a note to the judge. The State represented that the note contained the statement that the jurors did not think they could still be fair and impartial, although it appears from the record that the trial judge described the contents of the note as simply containing a request to confer with the judge. In either case, the court determined that the jury was too frustrated by the delay to remain impartial, and that neither party would be prejudiced by dismissing them and selecting a new jury. The jury was then dismissed. In a separate proceeding, the trial court determined that Aaron Cooper did not have a valid fifth amendment claim and that if he refused to answer the State's questions at the trial, he would be

held in contempt of court. The trial court further determined that any invalid fifth amendment claim by Aaron Cooper would be considered testimony. Because Cooper would be available for cross-examination, the State could introduce his grand jury testimony and former statements to the police and assistant State's Attorney as prior inconsistent statements pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1). However, the trial court found that Josephine Cooper did have a valid fifth amendment claim, and she was not required to testify.

On December 1, 1987, a new jury was selected, and the trial commenced the next day.

Defendant first contends that the trial court violated the State and Federal prohibitions against double jeopardy where jeopardy had attached, and there was no manifest necessity for a mistrial. The State concedes that jeopardy did attach when the jurors were impaneled and sworn but argues that the prohibition against double jeopardy was not violated because there was a manifest necessity to dismiss the jury.

■■ The trial court has the authority to dismiss the jury when, taking all of the circumstances into consideration, there is a manifest necessity to do so, or the ends of justice would otherwise be defeated. (*Illinois v. Somerville* (1973), 410 U.S. 458, 461, 35 L. Ed. 2d 425, 429, 93 S. Ct. 1066, 1069, citing *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165; *People v. Kettler* (1983), 112 Ill. App. 3d 1061, 1064-65, 446 N.E.2d 550.) The "manifest necessity" standard was first formulated by the Supreme Court in *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165. The relevant passage, which was quoted by the Supreme Court in *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, states:

" '[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes ***. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests,

in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.' " (*Jorn*, 400 U.S. at 481, 27 L. Ed. 2d at 554, 91 S. Ct. at 555, quoting *Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.)

The *Jorn* Court also discussed its holding in *Gori v. United States* (1961), 367 U.S. 364, 6 L. Ed. 2d 901, 81 S. Ct. 1523, which *Jorn* identified as a "variation" on the manifest necessity standard of appellate review. The Court stated:

> " 'We upheld reprosecution after the mistrial in an opinion which, while applying the principle of *Perez*, appears to tie the judgment that there was no abuse of discretion in these circumstances to the fact that the judge was acting "in the sole interest of the defendant." ' " (*Jorn*, 400 U.S. at 482, 27 L. Ed. 2d at 555, 91 S. Ct. at 556, quoting *Gori*, 367 U.S. at 369, 6 L. Ed. 2d at 905, 81 S. Ct. at 1527.)

Whether a manifest necessity is present rests within the sound discretion of the trial judge, "who is best situated intelligently to make such a decision." (*Somerville*, 410 U.S. at 462, 35 L. Ed. 2d at 430, 93 S. Ct. at 1069, quoting *Gori*, 367 U.S. at 368, 6 L. Ed. 2d at 904, 81 S. Ct. at 1526.) The broad discretion which the trial judge is called upon to exercise, in considering all of the circumstances, requires the application of a flexible standard to the varying and often unique situations as opposed to any abstract mechanical formula. (*Somerville*, 410 U.S. at 462, 35 L. Ed. 2d at 429-30, 93 S. Ct. at 1069, citing *Wade v. Hunter* (1949), 336 U.S. 684, 93 L. Ed. 974, 69 S. Ct. 834.) There is a manifest necessity to discharge the jury where an impartial verdict could not be reached. *Somerville*, 410 U.S. at 464, 35 L. Ed. 2d at 431, 93 S. Ct. at 1070; *People v. Turner* (1982), 105 Ill. App. 3d 393, 396, 434 N.E.2d 428.

On November 16, 1987, the first jury was selected and sworn in. However, the commencement of the trial was delayed while the court heard and ruled on the parties' pretrial motions as well as Aaron Cooper's fifth amendment claim. On November 19, 1987, six or seven jurors sent the court a signed note. The State represented the note as "showing that they [the jurors] now say [*sic*] may not be able to give both sides a fair and impartial trial." However, the trial judge referred to the note as stating that the jurors wanted to discuss the situation with the court. Neither the original note nor a copy of it can be found in the record. That afternoon there were still pretrial matters pending. The court concluded that the jurors appeared to be frustrated by the delay in the trial proceedings which would interfere with their ability to render a fair and impartial verdict. The court also

concluded that, in view of this observation, defendant would be more prejudiced if the court failed to dismiss this jury than if they were dismissed and a new jury selected following the resolution of the pretrial matters.

■ In support of his argument that the trial judge's dismissal of the jury was error, defendant initially quotes the passage in *Jorn* which states:

"[I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."

(*Jorn*, 400 U.S. at 486, 27 L. Ed. 2d at 557, 91 S. Ct. at 558.) Although the Court in *Jorn* held that the trial judge failed to exercise sound discretion to assure that there was a manifest necessity for the *sua sponte* declaration of a mistrial, the circumstances surrounding the dismissal of the jury differ from those in this case. In *Jorn*, the trial judge declared a mistrial and dismissed the jury to allow the witnesses to consult with their attorneys. In doing so, however, he acted very abruptly, without affording either counsel the opportunity to object or request a continuance. In this case, the trial judge allowed both counsel to respond to his determination that the jury should be dismissed and also allowed defense counsel to argue his motion to dismiss the indictment and bar a second trial based on double jeopardy. Further, the *Jorn* Court found that the judge's insistence on stopping the trial was "motivated by the desire to protect the witnesses rather than the defendant." (*Jorn*, 400 U.S. at 483, 27 L. Ed. at 555, 91 S. Ct. at 556.) We judge the contrary to be true in this case.

Defendant also cites *People v. Camden* (1986), 140 Ill. App. 3d 480, 488 N.E.2d 1082, *rev'd on other grounds* (1987), 115 Ill. 2d 369, 504 N.E.2d 96, and *People v. Campbell* (1984), 126 Ill. App. 3d 1028, 467 N.E.2d 1112. In *Camden*, the appellate court concluded that the dismissal of the proceedings was improper because only one of the jurors had indicated that he might not be able to render an impartial verdict, and the trial court had other alternatives to resolve the problem, such as polling other jurors as to their ability to remain impartial and substituting the tainted juror with an alternate juror. Both counsel could have also stipulated to continue the trial with 11 jurors. (*Camden*, 140 Ill. App. 3d at 488.) In *Camden*, the trial had also progressed to the point where the State had already presented its case in chief, and defense counsel had begun the presentation of his case. These factors distinguish *Camden* from the instant case. In *Campbell*

(126 Ill. App. 3d 1028, 467 N.E.2d 1112), the trial court determined that a juror's comment that she would be influenced by the appearance of defendant's mother as a witness was not a sufficient basis for a mistrial. *Campbell* also does not provide much support for defendant's argument because only one juror made the statement that she would be influenced by a witness' testimony, and she later made the statement that she could be fair and impartial.

■■ The trial judge in this case determined that there was a manifest necessity to dismiss the jury because their demeanor reflected their frustration with the four-day delay in the trial proceedings, and further delay was anticipated. The judge concluded that jurors' frustration might interfere with their ability to render an impartial verdict, which would be more prejudicial to defendant than the selection of a new jury after the pretrial matters had been resolved. There were also no alternative measures the trial judge could have taken to avoid what he perceived as the potential prejudice to defendant. Based on these factors, we conclude that the trial judge exercised sound discretion and considered all of the relevant circumstances in finding that there was a manifest necessity to dismiss the jury. As a result, defendant's retrial did not violate the double jeopardy prohibition.

■■ Defendant next contends that Aaron Cooper had a valid fifth amendment privilege and that defendant's right to due process was violated when he was compelled to testify. However, the trial court determined that he did not have a valid fifth amendment claim, and its ruling was affirmed by this court in *People v. Cooper* (1990), 202 Ill. App. 3d 336, 559 N.E.2d 942.

■■ Defendant's third contention is that the State's presentation of Aaron Cooper's grand jury testimony as substantive evidence as well as his out-of-court statements to the police for impeachment was reversible error. Prior to the trial, the court ruled that Aaron Cooper did not have a valid fifth amendment claim, and that if Aaron Cooper invoked the fifth amendment privilege at the trial, his statements would be considered as his testimony. At the trial, Aaron Cooper was called as a witness by the State, and after answering a few preliminary questions concerning his name, age and criminal record, invoked the fifth amendment in response to all remaining questions asked of him during direct, cross- and redirect examination. However, by way of leading questions, the State brought out the prior statements which incriminated defendant. On cross-examination, again by the use of leading questions, defense counsel brought out the fact that Cooper had contacted him several months earlier and had recanted his grand

jury testimony. The court admonished the jury to regard Cooper's invalid assertion of the fifth amendment privilege as his testimony. Because the court determined that Aaron Cooper had testified, his statements before the grand jury were admitted as prior inconsistent statements pursuant to section 115—10.1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1). The relevant portion of the statute provides:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
>     (a) the statement is inconsistent with his testimony at the hearing or trial, and
>
>     (b) the witness is subject to cross-examination concerning the statement, and
>
>     (c) the statement—
>
>         (1) was made under oath at a trial, hearing or other proceeding." Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.

While there is no question that defendant's statements before the grand jury were "statements made under oath," there is an issue of whether defendant's assertion of his fifth amendment privilege as his only response to both counsel's questions can be considered as testimony, and whether he was available for cross-examination. In *People v. Redd* (1990), 135 Ill. 2d 252, 553 N.E.2d 316, Leslie Bea, the fiance of the defendant's sister, requested an attorney and asserted his fifth amendment privilege when he was called as a witness by the State. In *Redd*, as in the instant case, the State used leading questions to examine the witness regarding his grand jury testimony, which contained statements incriminating to defendant. By this method, the witness' grand jury testimony was placed before the jury as substantive evidence even though the witness continued to invoke the fifth amendment in response to the prosecutor's questions. During cross-examination, the witness also refused to answer defense counsel's questions and continued to invoke the fifth amendment privilege. Defense counsel also used leading questions to put before the jury the witness' alleged pretrial statements to the public defender and an investigator in which he recanted a statement in his grand jury testimony implicating defendant in the crime. Defense counsel also brought out Bea's alleged statement to the investigator and public defender that he had been coerced by the police to make the statement. The trial court stated, outside the presence of the jury, that Bea's grand jury testimony was being admitted as substantive evidence pursuant to section 115—10.1 of the Code of Criminal Procedure.

On review, the supreme court noted that there was no record as to whether the trial court found that the witness' assertion of the fifth amendment privilege was valid. However, the court concluded that, based on the fact that the witness was allowed to refuse to testify based on the privilege, the trial court determined that reasonable grounds did exist for the witness to fear incriminating himself. The supreme court then addressed the trial court's finding regarding the witness' assertion of his fifth amendment privilege and held that it was error to construe the witness' assertion of the privilege as being inconsistent with his grand jury testimony. The supreme court further held that the witness was not available for cross-examination when he refused to answer any questions presented by the State or the defense. The court addressed recent cases ruling that the assertion of a memory loss could be considered as an inconsistent statement pursuant to section 115—10.1 of the Code of Criminal Procedure. (See *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481.) The *Redd* court ruled, however, that the assertion of the fifth amendment privilege could not be treated as a memory loss for purposes of satisfying the "inconsistency" requirement of section 115—10.1(a).

> "When a witness is permitted to assert the privilege not to incriminate himself, he is not claiming to be unable to recollect prior affirmations of asserted facts. The witness is not asserting a 'gap in [his] recollection concerning the content of a prior statement.' [Citation.] The witness is asserting only that he believes the answers to questions posed may tend to incriminate him." *Redd*, 135 Ill. 2d at 308.

We conclude that the ruling in *Redd* is dispositive of this case and that Aaron Cooper's assertion of the fifth amendment privilege is not a statement which is inconsistent with his grand jury testimony. Although the State attempts to distinguish *Redd* based on the reasoning that the witness in that case had a valid privilege, we find no language by the court in *Redd* limiting its ruling to only those instances where the assertion of the privilege was valid. Rather, the focus of the court's determination appeared to be on the content of the witness' assertion of the privilege and the fact that it did not meet the "inconsistency" requirement of the statute rather than on the validity of the assertion. In addition, the supreme court noted that there was no record regarding the trial court's determination as to whether the witness had a valid fifth amendment privilege. Therefore, the supreme court could only assume that the witness' assertion of the privilege was found to be valid based on the trial court's conduct. However, even though there was no record of the trial court's finding or

its reasoning, the validity of the privilege did not appear to be a pivotal issue in the supreme court's ruling. Thus, the fact that Aaron Cooper's assertion of the privilege was found to be invalid does not alter the fact that it did not meet the requirement of section 115—10.1(a).

■ We also conclude, as in *Redd*, that, where Aaron Cooper's only response to both the State and defense counsel's questions was the assertion of the fifth amendment privilege, he was not available for meaningful cross-examination. Like the witness in *Redd*, Aaron Cooper had also recanted his grand jury testimony prior to the trial. However, when he refused to answer any questions put to him by either counsel, he was not in a position to explain or be questioned regarding any inconsistencies between his grand jury testimony and his later statements to defense counsel. The fact that Aaron Cooper was present as a witness and sat still long enough for questions to be put to him did not qualify as meaningful cross-examination. See *Redd*, 135 Ill. 2d at 312.

■■ ■ The State argues, without any supporting authority, that the tape recording of Aaron Cooper's conversation with defense counsel prior to trial could substitute for defendant's cross-examination of Cooper at the trial. The State also claims that, although the witness in *Redd* also recanted his grand jury testimony, claiming that he had been coerced by the police, *Redd* is distinguishable because that witness' statements were not recorded. We find the State's reasoning that a pretrial, tape-recorded conversation can substitute for trial testimony without merit. "Cross-examination" is defined as:

> "The examination of a witness upon a trial or hearing, or upon taking a deposition, by the party opposed to the one who produced him, upon his evidence given in chief, to test its truth, to further develop it, or for other purposes." (Black's Law Dictionary 339 (5th ed. 1979).)

The tape recording at issue met none of these criteria. It was a recording of Aaron Cooper's conversation with defense counsel rather than defense counsel's examination of Cooper, and because it took place several months before trial, the conversation could not have been based on evidence in the State's case-in-chief. Furthermore, the conversation, unlike trial testimony, did not take place while Aaron Cooper was under oath. Finally, if Cooper's pretrial, tape-recorded conversation could substitute for cross-examination, defense counsel would be precluded from examining Cooper regarding the discrepancies between his grand jury testimony and the recorded conversation.

For the aforementioned reasons, we conclude that Aaron Cooper's grand jury testimony did not meet the requirements of subsections (a) and (b) of section 115—10.1 of the Code of Criminal Procedure and, therefore, constituted inadmissible hearsay and reversible error.

As part of this issue, defendant also contends that the admission of Aaron Cooper's other statements to the police as well as the use of the statements for impeachment was reversible error. Although not necessary to our disposition of this case, we will decide this issue because it is likely to reoccur upon retrial. William Gettings testified as a witness for the State that he was one of the officers who arrested Aaron Cooper for disorderly conduct. Gettings initially found Cooper asleep in bed. He woke him up and told him that his mother had requested that he leave the premises. According to Gettings' testimony, Cooper made the statement as he was getting dressed that "we were locking up the wrong person, that we shouldn't be locking him [*sic*] because he hadn't done anything, we should be looking for his brother." Prior to leaving with the police, Cooper made the statement to his mother that "he was going to tell the police everything because they should be getting her killer son." Gettings also stated that Cooper asked him and his partner whether they knew about a shooting on 79th Street.

The State argues that these statements were properly admitted as spontaneous declarations. We disagree. For a statement to qualify as a spontaneous declaration, three factors must be present: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Gacho* (1988), 122 Ill. 2d 221, 241, 522 N.E.2d 1146; *People v. Poland* (1961), 22 Ill. 2d 175, 180, 174 N.E.2d 804.) The court in *Poland* addressed the underlying reasons for this exception, stating:

> " 'Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.' " *Poland*, 22 Ill. 2d at 180-81, quoting 6 Wigmore, Evidence, 1747, at 195 (Chadbourn rev. 1976).

The event which was identified as startling by the State was Aaron Cooper's arrest for disorderly conduct. Thus, the only state-

ment Cooper made which was close enough to this event to preclude any time to fabricate was the statement he made to the police while getting dressed, that they should be looking for his brother. However, although Cooper may not have had time to fabricate between the time he was awakened and the time he made the statement, the statement referred to the fact that defendant shot the victim, which was an occurrence Cooper had known about for two weeks. Consequently, he had two weeks during which he could have fabricated the statement. Furthermore, Cooper's statement does not meet the third requirement of relating to the occurrence. The occurrence in this instance was Aaron Cooper's arrest for disorderly conduct. His statement that the officers should be looking for defendant related to defendant's commission of a murder rather than Aaron Cooper's arrest. We also note that Aaron Cooper's statement was contrary to the underlying purpose for this hearsay exception where the statement was made following a disagreement involving Cooper, his mother and defendant, and where the trustworthiness of the statement was questionable.

The circumstances in *Gacho* (122 Ill. 2d 221, 522 N.E.2d 1146), which is cited as authority by the State, differ from this case in several respects. The declarant in that case had been shot several times and then locked in the trunk of a car for 6½ hours before he made the statement naming defendant as the one who shot him. The occurrence in that case was far more startling than the one in this case, and although the declarant in *Gacho* had been shot several hours earlier, he had been confined during that time and had no opportunity to talk with anyone about the crime. Finally, there is no question that the declarant's statement related to his being shot and confined in the trunk of the vehicle. For these reasons, we conclude that the admission of Aaron Cooper's statement was also error. Because of our conclusion regarding this statement, we find that Cooper's other statements were not admissible as spontaneous declarations.

According to the police officers' trial testimony, Aaron Cooper made other statements incriminating to defendant while he was on his way to the police station and after his arrival. The State claims that it was proper to allow the jury to hear testimony regarding these statements for the purpose of impeaching Aaron Cooper's trial testimony. As previously discussed, Cooper's only statement at the trial was his assertion of the fifth amendment privilege.

●■ The purpose of impeaching evidence is to destroy the credibility of a witness. (*People v. Bradford* (1985), 106 Ill. 2d 492, 499, 478 N.E.2d 1341.) A witness whose only response is his assertion of the fifth amendment is only asserting that he believes he has reason-

able grounds to fear self-incrimination. In this instance, the only credibility issue is whether the witness is being truthful in asserting this belief. (*Redd,* 135 Ill. 2d at 317.) Therefore, we also conclude that the use of Aaron Cooper's out-of-court statements for impeachment was improper.

Because defendant's remaining issues are not likely to reoccur upon retrial, they are not addressed.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

McNAMARA, J., concurs.

JUSTICE EGAN, concurring in part and dissenting in part:

I concur in the majority view that trial errors require a new trial. But I dissent from the majority view that the judge's action in declaring a mistrial and the defendant's subsequent trial did not violate the constitutional provision against double jeopardy. For that reason I would reverse the defendant's conviction.

The rule governing the right to retry a defendant in a criminal case after a mistrial had been declared was set forth 167 years ago in *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165. The Supreme Court warned:

> "[T]he power ought to be used with the greatest caution, under urgent circumstances, and for *very plain and obvious causes.*" (Emphasis added.) (22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.)

In my judgment, to sanction the granting of a mistrial in this case is to ignore those words of the United States Supreme Court in *Perez.*

The majority emphasize that the decision whether to grant a mistrial must be left to the sound discretion of the trial judge, and I agree. But the majority opinion omits one overriding fact: the judge did not believe the defendant was in jeopardy after the jurors had been sworn but before any evidence had been heard. The State concedes that the judge was in error. When a court is acting under a misconception of the facts or the law, its exercise of discretion is seriously, if not fatally, flawed. See *Lawson Products, Inc. v. Avnet, Inc.* (7th Cir. 1986), 782 F.2d 1429; *Beermart, Inc. v. Stroh Brewery Co.* (7th Cir. 1986), 804 F.2d 409; *cf. Williamson v. Swank* (1971), 2 Ill. App. 3d 600, 603, 276 N.E.2d 737 (In determining whether discretion had been abused in the grant of a new trial, the question was whether

the trial judge acted under "a misapprehension or clearly erroneous understanding of the law").

It is my judgment that the record must reflect the "very plain and obvious causes" required by *Perez* and that this record does not do so. All we know is that the judge received a note from six or seven jurors. The contents of the note we do not know. The State represented that the note was an indication that the jurors *"may* not be able to give both sides a fair and impartial trial." (Emphasis added.) The judge made no such statement; he said only that the jurors wanted to discuss the matter with him. He did not discuss the matter with the jurors. Instead, he made a subjective determination, based on nothing except his personal observation, that the jurors "appeared to be frustrated." On that flimsy ground, he granted a mistrial over the defendant's objection.

The majority seek to distinguish *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, on the ground that the Supreme Court concluded that the mistrial declared was for the benefit of witnesses, while in this case, the mistrial was declared for the benefit of the defendant. Any conclusion that the mistrial was declared for the benefit of the defendant is based on speculation and nothing more. The defendant did not think so, and certainly some deference must be accorded his views. As the *Jorn* Court held, the judge's decision to abort the trial must always be tempered by considering the importance to the defendant of having the case concluded by the verdict "of a tribunal *he* might believe to be favorably disposed to his fate." (Emphasis added.) 400 U.S. at 486, 27 L. Ed. 2d at 557, 91 S. Ct. at 558.

In sum, I believe that when a mistrial is declared in a criminal case, the burden is on the State to show that there was a manifest necessity for the judge to do so. There was no such showing in this case. For this reason, I respectfully dissent.